[L. A. No. 15085. In Bank.—November 4, 1935.]

GEORGE H. RANDELL et al., Respondents, v. RALPH RANDELL et al., Appellants.

Drumm, Tucker, Martel & Drumm and Sharpless Walker for Appellants.

Head, Wellington & Jacobs for Respondents.

THOMPSON, J.—This is an appeal from a final judgment of partition. The property partitioned is an orange ranch of about 80 acres, originally owned in common by the plaintiff George H. Randell, his son, the defendant Ralph Randell, and his daughter Laura, who transferred her interest to the plaintiff. By the interlocutory judgment, entered April 3, 1931, and confirmed upon appeal by this court (*Randell* v. *Randell*, 219 Cal. 95 [25 Pac. (2d) 416]), the common property was found to consist of the ranch, 114 shares of stock in the John T. Carpenter Water Company and $3,400 in cash, as shown by the account of George H. Randell. The parties were found to be operating the property under a written agreement with respect to their interests therein and the plaintiffs were declared to be the owners of an undivided 55/100ths and the defendants of an undivided 45/100ths part thereof. The court further found that the plaintiffs were entitled to a partition as prayed, ordered a partition and appointed a referee.

The plaintiffs filed exceptions to the referee's report but the defendants did not. At the hearing on plaintiffs' exceptions it appeared that prior to the making of the report, the realty had been incorporated in a water district and the water stock had become valueless, or of nominal value only, whereas the referee had put on it a value of $100 a share. For this reason the court was of the opinion that another reference was necessary since the change in the water rights would in all probability materially affect the value of the realty. But plaintiffs having waived all objections to the values placed upon the realty by the referee and defendants having filed no objections at all, the court modifies the referee's report as proposed by the plaintiffs in a summary of

claims which they had filed at the court's request, the order reciting that, under the circumstances, the court considered the proposed modifications entirely equitable. Neither the "Referee's Report of Findings and Division" nor respondents' objections thereto have been included in the record but the referee, Finley, was present and testified at the hearing for confirmation. It appears that the allotment of lands and the valuations placed upon them by the referee remain unchanged but the owelty due to respondents was increased on account of the erroneous valuation of the water stock by the referee.

The referee allotted parcels A and B to the plaintiffs and parcels C, D, E, and F to the defendants. While the valuation allowed to each of these parcels does not appear, it does appear from the testimony of the referee that parcels A and B were improved by being planted to oranges, that parcels C and D were partly improved and parcels E and F had been allowed no value at all. The water stock was allowed a value of $100 a share by the referee and 70 shares were allotted to the plaintiffs and 44 shares to the defendants, the division being made not entirely on the basis of the 45 per cent and 55 per cent interests of the parties but partly on the basis of the acreage under cultivation which had been allotted to each one and taking into consideration the fact that the defendants had received less irrigated land. Then, in order to completely balance the division, since the land could not be divided exactly into the desired proportions, the referee allotted to the plaintiffs $1300 out of the $3,400, which was the balance still available out of a $17,000 mort gage on the property, the remainder to be divided between the parties in the ratio of 45 per cent to 55 per cent. The referee testified that he used the water in arriving at the valuation of the lands but gave the water stock a valuation in addition to that. It is not disputed that the water stock has no substantial value, the water now being obtained through the inclusion of the partitioned lands in the water district which succeeded to the facilities of the water company. The court so found and awarded the stock to the parties as closely as possible on a 55 per cent–45 per cent basis, 63 shares to the plaintiffs and 51 to the defendants. The court further found that parcels A and B did not constitute 55 per cent of the real property to be partitioned and

that partition could not be made equal without compensation and adjudged compensation on account of the inequality. Included in the money judgment is an award of $2,581.03, charged to defendants as 45 per cent of the excess of expenses over income ($5,735.62) since the original accounting prior to interlocutory judgment. The total, $6,580.03, corresponds to the total set out in plaintiffs' summary of claims in accordance with which the court modified the referee's report. It must be assumed that the items are also the same. The plaintiffs' itemized claims are as follows:

Value of all the land to be partitioned.... $69,401.00
      55 per cent........................ 38,171.00
      Plaintiffs' award (parcels A and B).. 36,772.00
      Deficit in award to plaintiffs................. $1,399.00
Award of water stock at $100 a share
      Plaintiffs (70 shares)............... $ 7,000.00
      Defendants (44 shares)............. 4,400.00
      Differential adverse to plaintiffs.............. $2,600.00
Excess of expenses over income (including
  $3,400 on hand at time of interlocu-
  tory) ...........................:........ $ 5,735.62
      Plaintiffs' share or 55 per cent...... 3,154.59
      Defendants' share or 45 per cent............ $2,581.03

Total ........................................ $6,580.03

■ Appellants first complain of the item of $2,600 allowed to plaintiffs on the stock award made by the referee. This allowance is plainly unwarranted. In the first place the division of the stock made by the referee was not allowed to stand but a new division was made by the court in accordance with the percentages established by the interlocutory judgment. Moreover, had the original award remained unchanged, the plaintiffs would only be entitled to an allowance for the difference charged to them on the award of the water stock had there been an additional allotment of realty to the defendants for the purpose of making up this supposed difference. It does not appear that this was done. On the contrary, it appears from the summary prepared by plaintiffs that the real property allotted to them fell only $1399 short of constituting 55 per cent of the total. This sum of $1399 was likewise allowed them by the court and the appellants concede this sum to be proper with respect to the

division of the premises. ■ Disregarding the stock entirely, it thus appears that plaintiffs have received their full 55 per cent of the real property. They are not harmed by having received more than their share of the worthless stock in the beginning nor by the court's dividing it up in the correct proportions. No allowance is therefore necessary or proper on account of the erroneous valuation of the water stock by the referee.

■ Coming to the item of $2,581.03 for the appellants' share of the excess of ranch expenses over income from the entry of the interlocutory judgment, the court found that since the original accounting the plaintiffs had expended $17,524.39 for necessary care, upkeep, improvement and maintenance of the property partitioned and the defendants had expended nothing; that the plaintiffs were chargeable with $11,788.77 received from the ranch and that defendants had received nothing; that the total excess of expenses (including the sum of $3,400 available from the loan) over income of $5,735.62 had been paid by plaintiffs and that there was due to the plaintiffs from the defendants 45 per cent of the excess of such expenses, or $2,581.03.

These findings were made upon statements which the plaintiff George H. Randell testified were accurate copies of his accounts. The defendants waived objection to the form of proof and the only objection to the introduction of the accounts was made upon the ground that a tenant in possession has no right to an accounting or contribution from his cotenant, in the absence of an agreement. Admittedly the interlocutory decree, affirmed by this court, established the operation of the ranch under an agreement between the parties and the right of the plaintiffs to an accounting and contribution from the defendants. The trial court on this hearing ruled, against the contention of the defendants, that the contract had not been terminated either by the action for partition, the interlocutory judgment or a letter written by the defendants thereafter, attempting to avoid liability for future operation, but could, in the absence of a breach by one of the parties, only be terminated by mutual consent of the parties or final decree in partition. Appellants have not seriously renewed their argument as to the propriety of any accounting but, on the appeal, have confined their objections to the insuffi-

ciency of the accounting made and to the item for the services of the plaintiff George H. Randell.

Appellants object to the accounts introduced on the ground that it was not shown that the plaintiff knew how to keep books or that they were properly and accurately kept; that the accounts were taken from books of original entry; that all the alleged expenses were necessary and reasonable or applied upon the common property; that all the receipts from the ranch or the bank or all repayments to the bank from the receipts of the ranch or that all advances by the bank for labor, taxes, water assessments, etc., which the bank had a right to make under its mortgage were shown therein; that the accounts were confusing and unintelligible and it did not appear how the money was furnished for the ranch or who was entitled to credit therefor. There were three accounts covering different periods of time. George H. Randell testified that they were accurate copies of books kept by himself, the entries being made by him at the time of the transaction, that he used the double entry system, crediting himself and debiting the ranch for his expenditures and debiting himself with amounts he received for the cotenancy, that the system of accounting and care of the ranch was the same as at the time of the previous trial, that the items of expenditure were for the care and upkeep of the ranch and were fair and reasonable; that money received from the bank was credited to the place and debited as payments were made on the obligations to the bank; that he had advanced the difference personally and that since the end of 1931 the bank had taken all receipts from the ranch and had also paid out various sums for labor, etc. Many of these objections go to the foundation and authentication of the accounts and no objection was made as to the manner of proof at the time they were admitted. For the rest, the accounts themselves are not brought up in the record on appeal and we must assume that the trial court acted properly on the entire record before it.

For part of the period George H. Randell charged the cotenancy with $200 a month for his services, thereafter at the rate of $125. That he was entitled to an allowance for his services under the agreement was settled by the affirmance of the interlocutory decree, the charge made in the accounts prior to the interlocutory decree, however, being

only $50 a month. The work was mainly of a supervisory or managerial nature, Randell being too advanced in years for active physical labor. The only evidence as to the reasonable value of his services was offered by defendants, who produced testimony that an experienced man who could do the physical labor as well as the supervising could be hired in that vicinity for from $75 to $80 a month. On this state of the record we must conclude that the implied finding that the allowance to plaintiff for his services was reasonable is unsupported by the evidence.

The court further found that the plaintiffs had been obliged to retain and employ attorneys for the purpose of "bringing and prosecuting this action to obtain a partition of the aforesaid property, and the services, of said counsel were for the common benefit of the parties hereto" and that "the sum of $2500.00 is the reasonable value of the services of said attorneys herein" and that 45 per cent of this sum should be borne by the defendants. The appellants object that it was not found what services were for the common benefit of both parties in the partition proceedings proper as distinguished from controversial issues connected with the accounting and the allowance for water stock. It is obvious from the finding recited and the language of the decree, giving judgment "for the further sum of $1,235.25, being 45% of (1) $170 paid to Col. S. H. Finley, Referee herein, (2) $75 paid to Orange Title Company for abstract of title, and (3) $2,500.00 reasonable counsel fee, all of which said sums were incurred and expended by the plaintiffs for the common benefit of the parties hereto", that the court intended to find that the services for which the counsel fees were allowed were for the benefit of both parties. Defendant introduced no evidence and made no argument at the time of trial on the question of what fees should be allowed or what would constitute a reasonable fee but, on the contrary, expressed himself as being satisfied to leave that matter to the discretion of the trial court. The presence and litigation of controversial issues between all the parties does not preclude the allowance of attorney's fees for services connected with such issues where such services are found to be for the common benefit of the parties. (*Capuccio* v. *Caire,* 215 Cal. 518 [11 Pac. (2d) 1097].) In the absence of evidence on the question we cannot say the trial court abused its discretion in allowing $2,500

as fee for such services as were rendered by the plaintiffs' attorney for the common benefit of both parties in the division of the common property.

Appellants' last point is that plaintiffs were not entitled to a money award growing out of the accounting but only to an additional award of property and they suggest parcel C, valued at $4,612.50 by the referee, as an additional allotment to plaintiffs with owelty in favor of the defendants if necessary. Appellants' argument is that by the interlocutory decree, and the prior decision of this court affirming it, it was determined that the contract, which the trial court here ruled to be still continuing in effect, governed the interests of the parties, the relevant provision being that the interests of the parties should be determined by their contributions, services and expenditures being held to be included within the term ''contributions''. Appellants' interpretation of the contract and the prior decision of this court is that when one of the tenants in common has made more than his share of necessary contributions he is entitled, not to enforce reimbursement from the others, but to an increased interest in the common property; that the interlocutory decree fixed the interests of the parties at 45 per cent and 55 per cent in accordance with their respective contributions made up to that time, and, under the contract of the parties, contributions made since the date of the interlocutory decree must be credited in the same way, by an increased interest in the property.

Respondents' only answer to this argument is that appellants in their objections to the findings and conclusions of law asked the court to grant owelty to the respondents and cannot now complain. This statement does not square with the facts. Appellants in their objection to the proposed conclusion of law with respect to the money judgment of $6,580.03 in favor of respondents merely asked that it be reduced to the sum of $1399, the amount by which the property awarded to respondents admittedly failed to meet the required proportion of 55 per cent, and this on the ground that the allowance of other items was improper. On this hypothesis it would have been unfair to ask the respondents to accept land valued at $4,612.50 and to pay the difference between that valuation and $1399 as owelty to the appellants. In ''Plaintiffs' Summary'' of claims we find this: ''*Second:*

We would prefer judgment for the difference in money due plaintiffs, in the nature of owelty, instead of having us given Parcel 'C' at a valuation of $4,612.50." and "if the court decides the plaintiffs should take Parcel 'C' instead of cash, then Parcels 'A', 'B' and 'C' and the difference of $6,580.03 and the value placed on 'C' of $4,612.50, or $1,967.53 should be awarded to the plaintiffs". It further appears from the summary that this represented a change of front and that plaintiffs had previously urged the distribution of parcel C to them, but had changed their minds due to their straitened circumstances caused by the heavy expenditures to which appellants had failed to contribute. From the order modifying the referee's report, it appears that the court for this reason considered the award of parcel C to the defendants, with a judgment of $6,580.03 for the plaintiffs, to be equitable. Had all the items allowed respondents by the trial court been substantiated by the record, the appellants must have prevailed on this point, in view of the contract of the parties and the prior determination of this court. However, it now appears that the allowance to the respondents must be considerably reduced and probably will fall well below the value fixed for parcel C. What will be the more equitable disposition of parcel C cannot be determined in advance of the final settlement of respondents' accounts.

■ Respondents have made a motion to strike the transcript on the ground that the request therefor was not given within the time required by section 953a of the Code of Civil Procedure. The record discloses that a motion for a new trial was denied on August 10th and the request was filed August 20, 1934. Without analyzing the right of appellants to a new trial under all the circumstances here involved, we think it clear the proceeding was sufficient to extend the time for requesting the transcript. The motion is denied.

The judgment is reversed and the cause remanded to the trial court for a determination of the reasonable value of the services of George H. Randell and the disposition of parcel C in accordance with such determination and the views herein expressed.

Curtis, J., Waste, C. J., Shenk, J., and Langdon, J., concurred.